UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:21-cr-00548-SRC-1 |
| ANTHONY WILLIS, | ) |
| Defendant. | ) |

### Memorandum and Order

In August 2024, Willis moved to dismiss his indictment, arguing that 18 U.S.C. § 922(g)(1) facially violates the Second Amendment. At that time, no binding precedent governed this issue: the Supreme Court had recently vacated and remanded the cases addressing this issue for further consideration in light of *United States v. Rahimi*, 602 U.S. 680 (2024). After the parties agreed that the Court could rule on this motion at any time, including after a trial, the Court held Willis's motion in abeyance, and the case proceeded to trial. A jury found Willis guilty of possessing a firearm as a felon in violation of section 922(g)(1) and, contrary to the finding of the jury in the first trial of this case, found that the United States had not proven that Willis had three or more convictions for offenses that occurred on different occasions. The Court now takes up Willis's motion to dismiss his indictment.

**I.      Background**

This case began in October 2021 when a grand jury returned an indictment charging Willis with possession of a firearm as a felon in violation of section 922(g)(1). Doc. 1. Since then, the case has progressed through pretrial motions, a superseding indictment, a trial, an appeal, several pretrial conferences, and a second trial. The Court details this progression below.

After a grand jury returned the original indictment, this case was referred to the Honorable Shirley P. Mensah, Chief United States Magistrate Judge, for pretrial matters. Docs. 1, 6. The case then progressed in typical fashion: a federal public defender was appointed to represent Willis, Willis made his initial appearance before a magistrate judge, Willis was ordered detained pending all further proceedings, and deadlines were set for pretrial motions. Docs. 8, 15, 19–20. But before the federal public defender, Kayla Williams, could file any pretrial motions on Willis's behalf, Willis sent Judge Mensah a letter. Doc. 23. The letter raised several matters, including sovereign-citizen arguments and attorney representation. *Id.*

Judge Mensah construed this letter as a motion to proceed pro se and set a hearing to determine whether Willis could proceed pro se under *Faretta v. California*, 422 U.S. 806 (1975). Doc. 25. During the *Faretta* hearing, Willis asserted that he was not the defendant despite Judge Mensah's finding that he was, doc. 100, *Faretta* Hr'g Tr. at 4:3–13, 22:10–25:11, stalled the proceeding by asking an irrelevant question, *id.* at 16:9–10 ("[C]an I ask you exactly what the yellow band mean[s] on the flag back there?"), had to be told to allow Judge Mensah to finish her questions, *id.* at 16:14–17, spoke over Judge Mensah, *id.* at 16:11–24, and asked Judge Mensah questions that would require Judge Mensah to give legal advice as the answer (which she cannot do), *id.* at 16:3–5, 25:8–11. Judge Mensah ultimately determined Willis could proceed pro se and appointed standby counsel. *Id.* at 33:10–13.

A few months later, Willis filed a "Notice of Nil Dicit Default Judgment," doc. 42, which Judge Mensah construed as a motion to dismiss his indictment, doc. 54 at 1.[1] She recommended that the Court deny that motion and advised the parties of their right to file objections to her

---

[1] The Court cites to page numbers as assigned by CM/ECF.

2

order, which Willis later did.  *Id.* at 6; doc. 61.  The Court set the case for trial, doc. 55, and a *Frye* and status hearing, doc. 59.

The Court held the *Frye* hearing and status hearing in August 2022.  Doc. 60.  Willis reaffirmed his intention to proceed pro se, and the United States expressed that it planned to seek a superseding indictment.  Doc. 68, Status Conf. & *Frye* Hr'g Tr. at 12:23–13:5.  During this hearing, Willis was "pleasant and respectful" to the Court.  *Id.* at 8:18–19.  He admitted that he did not have any legal training and confirmed that he understood that, despite his lack of legal training, he would have to follow all rules, orders, and laws.  *Id.* at 7:4–7.  A week later, a grand jury returned a superseding indictment.  Doc. 64.  The superseding indictment charged Willis with possessing a firearm as a felon in violation of section 922(g)(1) and included the United States' position that Willis had three or more prior convictions for a violent felony or a serious drug offense.  *Id.*

Three months later, Willis's behavior before the Court started to change, significantly.  On November 4, 2022, the Court held another *Frye* hearing and status conference.  Doc. 93.  During this hearing, the Court discussed with the parties a plea offer that the United States had made to Willis.  Doc. 246, Status Conf. & *Frye* Hr'g Tr. at 4:18–7:22.  As Willis conversed with the Court about the plea offer, Willis interrupted the Court as it spoke.  *Id.* at 7:17–22.  The Court had to tell Willis to "[w]ait a minute" to speak, which resulted in Willis instructing the Court to "[l]isten."  *Id.* at 8:1–2.  But the Court made Willis "[h]old on" and answer the questions that it had, questions that were necessary to determine whether the case needed to proceed to trial.  *Id.* at 8:3–4.  The Court again reminded Willis that he'd have to follow the Federal Rules of Criminal Procedure and Evidence and the Local Rules, which Willis stated that he understood.  *Id.* at 16:3–17:18.  As the hearing progressed, Willis was "generally . . . respectful," but the Court noted that the record in this case "demonstrates some

3

disruptive and disrespectful behavior and conduct by [Willis] that [had] interfered with the administration of justice," and warned Willis, under Federal Rule of Criminal Procedure 43(c)(1)(C), that it would "not tolerate any disruptive behavior." *Id.* at 16:13–17:4.

Fast forward a week and a half: the warning did not deter Willis. At the final pretrial conference, held the morning of the day the trial was set to begin, Willis repeatedly made arguments that the Court stated had no basis in law—requiring the Court to spend a substantial part of the hearing on matters the Court already ruled on. Doc. 126, Pretrial Conf. Tr. at 3:1–5:22. For example, Willis continued to assert that he was not the defendant despite the Court finding that he was the proper person before the Court (just as Judge Mensah had already done). *Id.* Then, Willis stopped listening to the Court as it spoke and began talking instead, which he fully admitted: "I didn't hear you, Your honor. Sorry. I was talking. I didn't hear what was said." *Id.* at 7:5–6. This disrespectful and disruptive behavior led the Court sternly tell Willis that "When I'm talking, you need to listen." *Id.* at 7:7–8. The Court then, once again, warned Willis of the remedies it has for disruptive behavior, including having the standby counsel represent Willis or gagging him. *Id.* at 7:9–13. When the Court asked if he understood the remedies the Court could take, Willis refused to answer the question, instead focusing on the fact that he disagreed with the Court gagging him:

> **THE COURT:** . . . Those are the options I have under the law. So do you understand that?
>
> **THE DEFENDANT:** No, sir.
>
> **THE COURT:** No. I'm not asking you if you agree. Do you understand what I've said to you?
>
> **THE DEFENDANT:** No, sir.
>
> **THE COURT:** What don't you understand?

4

>**THE DEFENDANT:** I don't understand how me speaking the truth can result to me being gagged.
>
>**THE COURT:** That's not my question. My question is: Do you understand what I have told you, yes or no?
>
>**THE DEFENDANT:** I get what you are saying, yes, sir.

*Id.* at 7:12–23. The Court then gave Willis his last warning, a warning that Willis attempted to interrupt: "This is my last warning to you, Mr. Willis. One more time – no. One more time and Ms. Williams is going to be representing you because I'm going to find that you have revoked your right to represent yourself." *Id.* at 7:24–8:3.

Relentless, Willis continued to interject his view that he was not representing himself and that he never agreed to represent himself, delaying the progression of the pretrial conference and the start of the trial while some 51 venirepersons sat waiting in the courthouse. *Id.* at 5:9–11, 9:3–15, 30:20–22. The Court, finding need to clarify whether Willis wanted to proceed pro se, stated, "Mr. Willis, you have stated unequivocally that you wish to represent yourself and you wish not to have an attorney. Are you changing your mind now, yes or no?" *Id.* at 9:10–13. "No sir," Willis responded, "[i]t's not me that's being represented." *Id.* at 9:4–15. In light of Willis's ongoing, consistently obstructionist, and dilatory behavior, the Court revoked Willis's right to proceed pro se and appointed Williams as Willis's representative. *Id.* at 9:18–20.

The case then proceeded to a jury trial, resulting in a jury finding Willis guilty of violating section 922(g)(1) and finding that he had three or more prior convictions that occurred on separate occasions. Doc. 113. The jury's separate-occasions finding carried great significance: it meant that Willis was an armed career criminal, enhancing his sentencing range from a statutory maximum of ten years to a mandatory minimum of fifteen years to life. 18 U.S.C. § 924(a)(2), (e)(1) (2018); doc. 1 (indicting Willis for conduct that occurred on or about July 19, 2021, rendering the 2018 version of section 924 applicable and not the 2022 version

5

(which increased the felon-in-possession maximum sentence to 15 years)); doc. 135 at ¶ 57.  The Court then sentenced Willis to a term of incarceration of 228 months.  Doc. 142 at 2.

Willis appealed, arguing in part that the Court had improperly revoked his right to proceed pro se.  *United States v. Willis*, 101 F.4th 577, 579 (8th Cir. 2024).  In considering this argument, the Eighth Circuit reviewed the record de novo, instead of considering whether the Court acted within its discretion.[2]  *Id.*  The Eighth Circuit agreed with Willis.  It concluded that the record lacked evidence that Willis was defiant or disruptive and instead showed that Willis was consistently respectful to the Court and the proceedings.  *Id.* at 583–85.  Accordingly, the Eighth Circuit held that the Court improperly revoked Willis's right to proceed pro se and remanded the case for a new trial.  *Id.* at 585–86.

Following the Eighth Circuit's remand of this case, the Court set the case for a status conference.  Doc. 171.  Within minutes of the hearing starting, Willis informed the Court that he wanted to proceed to trial with Williams as his counsel, doc. 173, which the parties agreed that Willis had the right to do, doc. 184; doc. 194 at 2.  The Court then set the case for trial.  Doc. 173.  Before trial began, Willis moved to dismiss his indictment in light of the Supreme Court's recent Second Amendment decisions.  Doc. 205.  The United States opposed this motion, arguing that section 922(g)(1) is constitutional under the Supreme Court precedents.  Doc. 206.

---

[2] Query whether the de novo standard of review governs an appellate court's consideration of whether a district court violated a defendant's Sixth Amendment right to self-representation.  As the Ninth Circuit has recognized, a circuit split exists regarding the proper standard of review for this issue:  some apply a de novo standard; others apply an abuse-of-discretion standard.  *Engel v. United States*, 968 F.3d 1046, 1049–50 (9th Cir. 2020) (collecting cases); *Brock v. United States*, 159 F.3d 1077, 1079 (7th Cir. 1998) ("[T]he issue before us is whether the district court's decision to revoke [the defendant's] *pro se* status was justified in light of Brock's conduct.  We review the district court's decision for abuse of discretion.").  And an intra-circuit split in the Eighth Circuit may exist.  Although it has applied a de novo standard in many cases, *see, e.g.*, *Mabie v. United States*, 663 F.3d 322, 328 (8th Cir. 2011), the Eighth Circuit has at other times applied an abuse-of-discretion standard, *Edelmann v. United States*, 458 F.3d 791, 809 (8th Cir. 2006) (holding that "the district court did not abuse its discretion in denying [the defendant's] request to represent herself").  Given the importance of defendants' Sixth Amendment rights and district courts' ability to manage their courtrooms in light of the circumstances they face, the question of which standard of review applies to Sixth Amendment self-representation challenges may merit further consideration.

During the final pretrial conference, the Court took this motion under advisement, deferring its ruling until after trial. Doc. 208.

The case then proceeded to trial, at which the jury found Willis guilty of being a felon in possession of a firearm. Doc. 216. In light of that finding, the case proceeded under *Erlinger v. United States*, 602 U.S. 821 (2024), to a phase two to determine if Willis had committed three criminal offenses on separate occassions. *Id.* The United States presented no witness testimony during that phase, instead opting for argument of counsel based solely on the records of the prior convictions. The jury found that the United States had not proven that Willis had committed his prior crimes on separate occasions. *Id.*

That finding also carried great significance: it meant that Willis was not found to be an armed career criminal, and his statutory maximum sentence was 10 years. 18 U.S.C. § 924(a)(2), (e)(1). In contrast to the 228-month sentence the Court imposed after the first conviction, the absence of an armed-career-criminal finding limited the Court to a statutory maximum of 120 months. The Court accordingly imposed a sentence after retrial of 120 months.

**II.     Discussion**

The Court now takes up Willis's motion to dismiss his indictment. Willis raises one issue: whether section 922(g)(1) facially violates the Second Amendment. Doc. 228 at 1. A facial challenge is "'a claim that the law or policy at issue is unconstitutional in *all* its applications,' regardless of the individual circumstances." *United States v. Veasley*, 98 F.4th 906, 909 (8th Cir. 2024) (quoting *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019)). "To counter a facial challenge," the prosecution must identify at least one constitutional application of the statute. *See id.* at 909–10. If it does so, then the Court must conclude that the statute is facially constitutional. *See id.*

7

Here, the United States and Willis agree that *United States v. Jackson*, 110 F.4th 1120 (8th Cir. 2024)—a case decided after Willis moved for dismissal—forecloses Willis's argument that section 922(g)(1) is facially unconstitutional.  Doc. 228 at 1, 8; doc. 235 at 1.  To succeed on a facial challenge to a statute, a defendant must "establish that no circumstances exists under which the" statute "would be valid."  *Rahimi*, 602 U.S. at 693 (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).  In other words, if a statute is constitutional as applied to *one* defendant, then the statute is not facially unconstitutional.  In *Jackson*, the Eighth Circuit held that section 922(g)(1) is constitutional as applied to Edell Jackson.  110 F.4th at 1125.  Thus, the Court agrees with the parties that *Jackson* forecloses Willis's argument that section 922(g)(1) is unconstitutional in all its applications.  *Id.* at 1125–29; *Veasley*, 98 F.4th at 909–10; *see also United States v. Jackson*, 121 F.4th 656, 658 (Stras, J., dissenting from denial of reh'g en banc) (stating that *Jackson* renders it "impossible to prevail" on a facial challenge to felon-dispossession laws).  Moreover, under *Jackson*, "there is no need for felony-by-felony litigation regarding the constitutionality of" section 922(g)(1) because it is constitutional in all of its applications.  *See Jackson*, 110 F.4th at 1125, 1129.  *Jackson* forecloses Willis's challenge.

### III. Conclusion

For these reasons, the Court denies Willis's [205] Motion to Dismiss his indictment and [228] Supplemental Motion to Dismiss and Memorandum in Support.

So ordered this 24th day of January 2025.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE